UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT D. SANGO,

                       Plaintiff,                       Case No. 1:14-cv-342

v.                                              Honorable Janet T. Neff

STEPHANIE LEWIS et al.,

                       Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.  In addition, the Court will deny Plaintiff's pending motions as moot.

### Factual Allegations

Plaintiff Robert D. Sango is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at Ionia Correctional Facility (ICF).  Defendants are employees of ICF: Account Technician Stephanie Lewis, mail room employee S. Eaton, Administrative Manager Phyllis Clement, Litigation Coordinator (unknown) Limpkee, and unidentified store personnel ("Unknown Part(y)(ies)").  Plaintiff also names ICF itself as a defendant.

According to the complaint (docket #1) and supplement to the complaint (docket #7), on September 23, 2013, Plaintiff attempted to send the entire balance in his prison account, $11.00, to pay the filing fee for a case that he filed in the Eastern District of Michigan, *Sango v. Johnson et al.*, No. 2:13-cv-12808 (E.D. Mich.).  Defendant Lewis allegedly refused to send the funds, and then the claim was dismissed.  After Plaintiff notified the court that accounting staff refused to send the fee, the court reopened his case.[1]  According to Plaintiff, "In retaliation, Lewis began denying [Plaintiff] indigent loan," and Defendant Eaton would not allow Plaintiff to send letters to his family, telling him that he had already "used [his] 10 letters from indigent to send legal mail, using filings from the month before[.]"  (Compl., Page ID#1.)

Plaintiff wrote a grievance about the foregoing conduct by administrative staff, and in response to the grievance, Defendant Clement incorrectly stated that she interviewed Plaintiff on November 25, 2013, and that Plaintiff had received money in his account, though Plaintiff contends he did not receive any money.  Plaintiff also notified the magistrate judge in the Eastern District case, so that administrative staff would provide him a loan to buy hygiene items, but unidentified

---

[1]A copy of the order in that case is attached to Plaintiff's motion for a temporary restraining order, which was filed contemporaneously with the complaint.  (*See* docket #2-1, Op. & Order Granting the Mot. to Alter J., *Sango v. Johnson et al.*, No. 2:13-cv-12808 (E.D. Mich. Oct. 2, 2013).)

store personnel would not send him hygiene items.  In a declaration of facts filed with the complaint, Plaintiff asserts that, as of March 26, 2014, he has not received "soap or toothpaste or any other Hygiene item from store (via indigent loan)."  (Pl.'s Decl. of Facts, docket #4, Page ID#12.) Apparently, prison staff also possess complimentary, state-issued soap and toothpaste powder, but when they come to Plaintiff's cell, they tell him that they do not have any left.

Finally, Plaintiff alleges that Defendant Limpkee told ICF staff that she had spoken with the Attorney General about a case that Plaintiff filed in the Eastern District, and that the court does not have jurisdiction over Plaintiff's case, so staff could "continue their campaign of retaliation."  (Suppl. to Compl., docket #7, Page ID#18.)  Limkee also told staff that, according to the Attorney General, Plaintiff (who is a "strict vegetarian") was not entitled to dictate his "religious meals." (*Id.*)

As relief, Plaintiff seeks damages and a preliminary injunction requiring the MDOC to give him "'soap, deodorant, and toothpaste' off the indigent store list, immediately."  (*See* Mot. for Temporary Restraining Order, docket #2, Page ID#2.)

## Discussion

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

- 3 -

do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Account Technician Lewis

Plaintiff claims that Defendant Lewis would not send the money in his prison account to the district court for the *Sango v. Johnson* case, ostensibly in order to prevent Plaintiff from

- 4 -

proceeding in that action, and then denied him an indigent loan sometime after he reported her conduct to the court in that action.

With regard to Defendant Lewis' refusal to send his money to the court, it is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. He must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). In this case, Plaintiff has not alleged actual injury to pending or contemplated litigation. Though his case

was initially dismissed, Plaintiff alleges that the court subsequently reopened it for further proceedings.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. Plaintiff does not allege any facts regarding the underlying claims in his Eastern District case; thus, he has not pleaded an essential element of an access-to-courts claim as required by *Christopher*.

Furthermore, Plaintiff's assertion that the failure to pay $11.00 in filing fees resulted in the dismissal of his case is utterly inconsistent with the facts described in the district court's order to reopen the case. That order is attached to Plaintiff's motion for a temporary restraining order (docket #2-1), and Plaintiff specifically references the order in his complaint to support his claim. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (When evaluating a complaint for failure to state a claim, the Court may consider "the Complaint and any exhibits attached thereto, public record, [and] items appearing in the record of the case . . . so long as they are referred to in the Complaint and are central to the claims contained therein.").

In its order, the district court noted that it had dismissed Plaintiff's case because he failed to "pay the $400.00 filing fee or to submit an application to proceed *in forma pauperis* within thirty days of the [court's August 29, 2013 deficiency] order." (*See* docket #2-1, Op. & Order Granting the Mot. to Alter J., at 1, *Sango v. Johnson et al.*, No. 2:13-cv-12808 (E.D. Mich. Oct. 2,

2013).)  In response to the dismissal of his case, Plaintiff explained to the court that he did not know about the deficiency order because he did not receive a copy of it.  (*See id.* at 2.)  The court granted his motion to reopen the case, noting that Plaintiff had cured the deficiency by submitting an application to proceed *in forma pauperis*.  (*Id.* at 3.)  The order makes no mention of the fact that Plaintiff claimed to be unable to send funds to the court and, in any event, Plaintiff needed to do more than pay $11.00; he needed to pay the full $400.00 filing fee or file an application to proceed *in forma pauperis*.  Thus, it is clear from the record that Plaintiff's case was dismissed because he did not comply with the court's deficiency order, not because Defendant Lewis prevented him from paying $11.00.  In short, her actions did not cause any injury to Plaintiff in that case.  Accordingly, for all the foregoing reasons, Plaintiff does not state an access-to-courts claim against Defendant Lewis.

Next, Plaintiff asserts that Defendant Lewis retaliated against him by denying him an indigent loan.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).  Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation.  He alleges no facts from which to reasonably infer that Defendant Lewis' actions were motivated by any of Plaintiff's protected conduct.  To the extent Plaintiff alleges that she retaliated against him for reporting her conduct to the court in the *Sango v. Johnson* case,  Defendant Lewis is not a party to that action, and there is no indication that she was even aware of his report when she denied his loan.  To the extent Plaintiff claims she intended to retaliate against him for filing the case itself, he has not alleged a

- 8 -

plausible connection between her actions and his protected conduct.  The mere fact that her actions occurred sometime after he filed a lawsuit against other prison officers is not sufficient, in itself, to state a plausible claim.[2]  Thus, Plaintiff does not state a § 1983 claim against Defendant Lewis.

### B.  Mail Room Employee Eaton

Defendant Eaton allegedly refused to allow Plaintiff to send letters to his family on one occasion, because Plaintiff had already sent ten letters while on indigent status the previous month.  A prisoner on indigent status can obtain a postage loan "equivalent for mailing a maximum of ten first class letters of one ounce or less during each month s/he is on indigent status."  MDOC Policy Directive 04.02.120 ¶ H (Dec. 3, 2012).  The postage is loaned at the time the letter is sent; postage not used in a particular month is not carried forward.  *Id.*  Additional funds may be loaned, as needed, to send mail related to pending litigation.  MDOC Policy Directive 05.03.118 ¶ J (Sept. 14, 2009).

Plaintiff's allegations potentially implicate his rights under the First Amendment. A prisoner has a constitutional right to exercise his freedom of speech by sending personal correspondence.  *Procunier v. Martinez*, 416 U.S. 396, 406 (1974); *Hudson v. Palmer*, 468 U.S. 517, 547 (1984).  A restriction on this right is valid if it "'further[s] an important or substantial government interest unrelated to the suppression of expression,'" and [does] not limit First Amendment freedoms 'greater than is necessary or essential to the protection of the particular

---

[2]Also, though not determinative of his claim, Plaintiff acknowledges that he possessed a spendable balance of $11.00 in his prison account in September 2013, which suggests that he was not eligible for indigent status the following month.  *See* MDOC Policy Directive 04.02.120 ¶ B(1) (Dec. 3, 2012) (stating that, subject to a few exceptions, a prisoner is not eligible for indigent status if his "beginning spendable balance plus receipts" or "actual account balance" "equaled or exceeded $11.00 in the calendar month preceding application for indigent status[.]").  Thus, Lewis may have denied Plaintiff's application for an indigent loan because he did not qualify for one, not because she intended to retaliate against Plaintiff.

governmental interest involved.'" *Bell-Bey v. Williams*, 87 F.3d 832, 838 (6th Cir. 1996) (quoting

*Procunier*, 416 U.S. at 413); *see also Martucci v. Johnson*, 944 F.2d 291, 295-96 (6th Cir. 1991).

The policy ostensibly relied upon by Eaton, which limits the amount of mail an

indigent prisoner may send at state expense, furthers an important government interest unrelated to

the suppression of expression, which is the "management of limited government resources."  *See*

*Bell-Bey*, 87 F.3d 832 at 838 (quoting *Bout v. Abramajtys*, No. 93-1383, 1994 WL 329219, at *2 n.3

(6th Cir. July 7, 1994)).  In *Bell-Bey*, the Sixth Circuit considered the impact of the MDOC's ten-

letter limit on a prisoner's ability to send *legal* mail, which implicates a prisoner's right of access

to the courts.  The prisoner in *Bell-Bey* specifically challenged the fact that the he could obtain

postage for legal mail in excess of the ten-letter limit only if he allowed prison officials to inspect

his mail to make sure that it was related to pending litigation.  The court concluded that the ten-letter

limit was constitutional as a "'reasonable upper limit on how much [postage] may be provided in

a given month,'" noting that the plaintiff could send additional legal mail by submitting proof that

it was related to pending litigation, or waiting until the next month's allotment.  *Id.* at 839 (quoting

*Bout*, 1994 WL 329219, at *2).

Though *Bell-Bey* did not consider the policy's impact on a prisoner's ability to send

non-legal mail, its reasoning readily extends to that context.  In other words, the ten-letter limit is

reasonable and does not constrain Plaintiff's expression more than is necessary to further the

government's interest in the management of its limited resources.  Indeed, the Sixth Circuit has held

on several occasions that indigent prisoners do not have a constitutional right to obtain free postage

to send non-legal mail.  *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Even as an

indigent inmate, Argue had no constitutional right to free postage for nonlegal mail.") (citing *Moore*

*v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) and *Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th

Cir. 1994)); *see also Brown v. Crowley*, No. 99-2216, 2000 WL 1175615, at *3 (6th Cir. Aug. 10,

2000) ("The First Amendment does not compel prison officials to provide indigent prisoners with

unlimited free postage and materials for non-legal mail.").

        In addition, the Court notes that Plaintiff complains about one instance in which he

was prevented from sending letters to his family.  Generally, "isolated instances of interference with

prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment.  *See*

*Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431

(8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or

resulting interference with [the inmate's] right to counsel or to access to the courts, does not give

rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing

*Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise

to the level of a First Amendment violation).  Plaintiff's inability to send mail to his family on one

occasion, or in one particular month, appears to have been an isolated occurrence.  Thus, Plaintiff's

allegations are not sufficient to state a First Amendment claim.

        Plaintiff also implies that Eaton misapplied prison policy by relying on the number

of letters that Plaintiff had sent in the previous month, instead of the current month.  A violation of

prison policy is not sufficient to state a § 1983 claim, however.  *Laney v. Farley*, 501 F.3d 577, 581

n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*,

953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th

Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional

violation because policy directive does not create a protectible liberty interest).  Section 1983 is

addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Consequently, Plaintiff does not state a § 1983 claim against Defendant Eaton.

### C. Administrative Manager Clement

After Plaintiff filed a grievance about the denial of an indigent loan, Defendant Clement allegedly responded to the grievance by stating, falsely, that she had interviewed Plaintiff and that Plaintiff had received money in his account. Plaintiff alleges no consequences as a result of Defendant Clement's statements. False statements by a prison official do not themselves give rise to a constitutional claim. To the extent that Clement's statements resulted in the denial of his grievance, Plaintiff does not state a claim because he has no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

In addition, though Defendant Clement is apparently the manager for other administrative staff, she may not be held liable under § 1983 for the conduct of her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior.

*Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Similarly, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Clement engaged in any active unconstitutional behavior. Thus, he fails to state a § 1983 claim against her.

## D.  Unidentified Store Personnel

Plaintiff claims that unidentified store personnel will not send him hygiene items, including soap and toothpaste. According to his motion for a temporary restraining order, he has not received hygiene items from the prison store since July 2013. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348

- 13 -

(citation omitted).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege any consequences as a result of being deprived of hygiene items from the prison store.  While the deprivation of soap, toothpaste and other hygiene items for an extended period of time could present a serious risk to an inmate's health or safety, *see Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (discussing cases involving the deprivation of hygiene items), Plaintiff does not allege that Defendants were aware of, and deliberately indifferent to, such a risk.  Indeed, Plaintiff alleges that housing unit staff possessed soap and toothpaste powder for distribution to prisoners.  Plaintiff asserts that the staff in his unit do not provide him with these items when they come to his cell, but he does not contend that the unidentified store personnel were aware of this situation, let alone that they acted with deliberate indifference to a serious need.  Thus, he does not state an Eighth Amendment claim, or any other § 1983 claim, against them.  *Cf. Argue*, 80 F. Appx. at 430 (holding that a prisoner had failed to state an Eighth Amendment claim because he did not allege a complete denial of hygiene products or that he "suffered extreme discomfort" as a result of the denial); *Moore*, 36 F. App'x at 171 (finding that the plaintiff had failed to allege that "he suffered extreme discomfort due to his inability to purchase the items or that he was completely

denied the basic elements of hygiene"); *Crowley*, 2000 WL 1175615, at *3 (finding that the denial of indigent status "did not show that the defendants knowingly forced him to go without shampoo and toothpaste"); *Brown v. Brown*, 46 F. App'x 324, 325-26 (6th Cir. 2002) (holding that a prisoner who was merely inconvenienced because he was unable to purchase personal hygiene supplies for several months due to a hold on his account failed to state an Eighth Amendment claim). *But cf. Flanory*, 604 F.3d at 256 (holding that the plaintiff stated a claim based on allegations that he was deprived of toothpaste for 337 days, that defendants were aware that he was without toothpaste, and that he suffered peridontal disease as a result of the deprivation).

### E.  Ionia Maximum Correctional Facility

Plaintiff sues the Ionia Maximum Correctional Facility (ICF), a prison facility.  ICF is merely a building, not an entity capable of being sued in its own right.  Furthermore, to the extent that Plaintiff intends to name the MDOC as a Defendant, the MDOC is immune from relief. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No.

- 15 -

00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting

through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See*

*Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S.

58 (1989)).  Accordingly, the Court will dismiss Ionia Maximum Correctional Facility.

### F.  Litigation Coordinator Limpkee

Defendant Limpkee, who is part of the ICF "administrative team," allegedly told

other officers that they could continue a "campaign of retaliation" against Plaintiff, and that,

according to the Attorney General, Plaintiff could not "dictate" his "religious" meals.  (Suppl. to

Compl., docket #7, Page ID#18.)  Apparently, Limpkee was referring to a complaint that Plaintiff

filed in the Eastern District of Michigan, in which Plaintiff alleged that prison officers had taken

"entire portions" of food off his meal tray in order to "retaliate" against him.  (*Id.*)  Limpkee's

statements and opinions about Plaintiff's case did not violate Plaintiff's constitutional rights.

Plaintiff implies that Limpkee failed to stop her subordinates from retaliating against him, but as the

Sixth Circuit has repeatedly emphasized, for a supervisor to be liable under § 1983:

> There must be a showing that the supervisor encouraged [a] specific incident of
> misconduct or in some other way directly participated in it.  At a minimum, a § 1983
> plaintiff must show that a supervisory official at least implicitly authorized, approved
> or knowingly acquiesced in the unconstitutional conduct of the offending
> subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d

416, 421 (6th Cir. 1984)).  Plaintiff has not identified any specific incidents of unconstitutional

conduct by Limpkee or her subordinates.  Plaintiff avers no facts to support his broad assertion that,

by taking some of his food on unidentified occasions, prison officers were retaliating against him

for his protected conduct (or were otherwise violating his constitutional rights).  Absent allegations

that Defendant Limpkee was personally involved in any unconstitutional conduct, Plaintiff's complaint fails to state a § 1983 claim against her.

### III.  Supplemental Jurisdiction

Plaintiff asks the Court to exercise supplemental jurisdiction over unidentified "state tort" claims.  (Compl., docket #1, Page ID#1.)  The Court declines to do so.  "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).  Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.  *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state law claims, if any, will be dismissed without prejudice.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action under 42 U.S.C. § 1983 will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims, if any, will be dismissed without prejudice.  Moreover, because the case will be dismissed, the Court will deny Plaintiff's pending motions, including his motion for a temporary restraining order (docket #2), his

- 17 -

motion for discovery (docket #3), and his motions for production of documents (docket ##11, 12) as moot.

       The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

       This is a dismissal as described by 28 U.S.C. § 1915(g).

       An Order and Judgment consistent with this Opinion will be entered.

Dated: July 18, 2014                  /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge